409 A.2d 1076 (1979)
HARTFORD ACCIDENT AND INDEMNITY CO., Appellant,
v.
DIKOMEY MANUFACTURING JEWELERS, INC., Appellee.
No. 13421.
District of Columbia Court of Appeals.
Argued June 19, 1979.
Decided December 14, 1979.
*1077 Joseph G. Hitselberger, Arlington, Va., for appellant.
Solomon L. Margolis, Washington, D. C., for appellee.
Before KERN, GALLAGHER and NEBEKER, Associate Judges.
GALLAGHER, Associate Judge:
This appeal raises a single issue: whether the trial court, sitting without a jury, properly excluded testimony regarding the value of a diamond ring, missing after bailment by the owner. Appellant Hartford Accident and Indemnity Co. (Hartford) presented two value witnesses at trial, a gemmologist and the ring owner, to establish damages caused by the alleged breach of bailment contract. The trial court struck both valuations as incompetent evidence, and then dismissed on the basis of Hartford's failure to prove the ring's value. We conclude the trial court committed error in so ruling.

I
The owner, Mrs. Coplan, brought her engagement ring to Gemini Jeweler's Inc. (Gemini) for appraisal and resizing. While she watched, the store manager placed the ring in an envelope which was then sealed. Later that week, the envelope was picked up by a messenger and brought to Dikomey Manufacturing Jeweler's, Inc. (Dikomey) for the actual work. As a small retail store Gemini did not have the capacity to perform appraisal and resizing, and routinely "farmed out" such work to Dikomey and others. On this occasion, however, the ring was never seen again.
An insurer of Gemini, Hartford promptly settled the ring owner's claim for $6,500. Hartford then sought recovery from Dikomey who, it alleged, was primarily liable for the loss. At trial, Hartford and Dikomey *1078 offered conflicting accounts of the ring's disappearance. Dikomey claimed the ring was never received, and the envelope was empty upon arrival. The store manager of Gemini testified for appellant that she handed a sealed envelope containing the ring to Dikomey's messenger on January 10, 1974. On January 16, when she went to Dikomey to pick up several other items she was notified that Mrs. Coplan's ring had never arrived.
Counsel for Dikomey contended in opening argument "the case, if it gets to that point, will fail on the damage issue." At the close of the case, the trial court later granted "defendant's motion for dismissal on the basis that plaintiff failed to provide any competent evidence of value of the lost diamond."[1]
In order to resolve the issue raised, we must briefly review the valuation evidence presented at trial. Mrs. Coplan, as owner of the ring, testified that the missing gem was a 1.65 carat, round, perfect quality diamond, purchased twenty years before. When asked to value her engagement ring on direct, Mrs. Coplan stated $7,500. On cross-examination Mrs. Coplan admitted that her opinion as to value was based solely on expressions of value given her by others. However, she reiterated on redirect, "with the advice of gemmologists, the appraisals I got, I would not have sold the ring for less than that."
Mr. Gardner, the proprietor of Gemini, testified that he had seen the "Coplan diamond" in December 1973 when Mrs. Coplan brought the ring in to be reset. He described the stone as "a round, brilliant cut diamond, of an approximate two carats."
Mr. Charles Whiteley, a jewelry store owner with training as a gem appraiser, valued the stone at $7,500, based on his knowledge of the market in March 1974, and on the description he was given.
Mr. William White, president of Dikomey and a qualified gemmologist, testified that he obtained a stone from New York for Mr. Gardner based on Mrs. Coplan's description, to be offered as a replacement.[2] Mr. White valued the replacement diamond at $4,200. As a registered gemmologist, Mr. White stated that he would never give an appraisal of a gem unless he had personally examined it.
In a memorandum opinion and order the trial court struck Mrs. Coplan's and Mr. Whiteley's valuation testimony, as improperly based on hearsay. Mrs. Coplan's opinion had no independent basis, in the court's view, since she relied on Mr. Whiteley's appraisal. Similarly, the trial court identified the fatal flaw in Mr. Whiteley's testimony as his reliance on the description in Mrs. Coplan's insurance policy, an out-of-court statement by another, in formulating his opinion. In the absence of a showing by appellant that gemmologists regularly rely on descriptions supplied by other gemmologists in appraising diamonds, the trial court concluded that Mr. Whiteley's opinion of value must be stricken.

II
A. In determining the qualification of a witness to testify as to value, courts usually look to three factors: (1) experiential capacity, (2) knowledge of the standard of value, and (3) knowledge of the object to be valued. 3 Wigmore, Evidence § 711 at 43 (Chadbourn Rev.1970). Owners of personal *1079 property, however, have long been accorded special status as value witnesses in this jurisdiction; as a general rule, the owner's valuation of his property is admissible without qualification other than ownership. "[T]he owner of an article, whether or not he is generally familiar with the value of like articles, may testify as to his estimate of the value of his own property."[3]Yonan Rug Service, Inc. v. United Services Automobile Association, D.C.Mun.App., 69 A.2d 62, 63 (1949). See also Manning v. Lamb, D.C.Mun.App., 89 A.2d 882, 884 (1952); Walsh v. Schafer, D.C.Mun.App., 61 A.2d 716 (1948). Thus, what the owner lacks in general familiarity with values is more than balanced by his knowledge of the article itself.[4] The owner's "Lack of general knowledge of value goes to the weight of the testimony and not to its competency." Yonan, supra, at 64. See also Glennon v. Traveler's Indemnity Co., D.C.Mun.App., 91 A.2d 210, 211 (1952). We have stated that the rule applies to owners of any article of personal property, including jewelry. Glennon, supra, at 211, 37 A.L.R.2d 964 (1954) (ownership of diamond ring entitled plaintiff to give her estimate of value).
At trial, the court properly allowed Mrs. Coplan to express an opinion upon the ring's value over appellee's objection to the lack of foundation. Generally, "[m]arket value is not a question of science and skill upon which experts alone may give an opinion." Rogers, The Law of Expert Testimony § 26, at 34 (3d ed. 1941). An owner need not prove "cultivation of the judgment by special experience . . . before [he] can be permitted to form and express an opinion on values." 3 Wigmore, supra, § 712 at 44. However, where special expertise or experience is required to estimate value, mere ownership will not establish adequate knowledge of the value standard. See, e. g., Yonan Rug Service, supra. Although some jurisdictions hold that valuation of jewelry requires special experience,[5] the District of Columbia shares the majority view that a nonexpert owner may testify as to value of jewelry. See Glennon, supra. Mrs. Coplan testified as an "ordinary" non-expert witness. Thus, her lack of formal training as a gemmologist did not, by itself, preclude competence to estimate the reasonable value of her engagement ring.
Appellee concedes on appeal that Mrs. Coplan, as owner of the ring, was competent to estimate its worth on direct examination. However, says appellee, she was not competent to testify as to the opinion of others. Appellee points to Mrs. Coplan's testimony on cross-examination, where she conceded lack of expertise in gem appraisal and reliance on the estimates of third persons, and argues that her concession stripped the valuation of probativeness. As Mrs. Coplan admitted on cross-examination:
Q: Mrs. Coplan, am I correct that you have no training, whatsoever, in gems other than in knowing what you like?
A: Exactly.
Q: You don't purport to know anything about the intricacies of quality which goes into a precious stone like a diamond for the purposes of appraising; correct?
A: Correct.
Q: And am I also correct that your opinion as to this seventy-five-hundred dollar value is based solely on expressions of value given to you by others; isn't that correct?
A: Correct.

*1080 Q: So, if I were to ask you nowtake away those opinions, you really wouldn't have the slightest idea what that ring is worth isn't that correct?
A: Correct.
Although Mrs. Coplan qualified to testify as owner, appellee remained free to elicit the grounds of her belief. As a general rule, the facts upon which an owner bases his opinion go to the weight of the testimony, not to its admissibility. See, e. g., Glennon, supra; District of Columbia Redevelopment Land Agency v. 13 Parcels of Land, 175 U.S.App.D.C. 135, 534 F.2d 337 (1976); see also State ex rel. Herman v. Lopez, 8 Ariz.App. 61, 63, 442 P.2d 884, 886 (1968) (cross-examination of owner about how he arrived at valuation affects weight but not competency). However, appellee contends that a rule of exclusion must apply where, as here, the owner's opinion is based upon an improper element. As appellee alleges, Mrs. Coplan lacked an independent opinion of value; her knowledge of the particular value at issue was based solely, and improperly, on the hearsay assertions of Mr. Whiteley and other appraisers. Given the improper basis, appellee reasons, her valuation must be excluded as incompetent evidence.
Where the owner repeats particular out-of-court statements by an expert for their truth or purports to give the expert's view, he improperly uses hearsay evidence. The owner's opinion in such cases is inadmissible because it introduces expert testimony without producing the expert. In Yonan Rug Service, supra, the owner of the two oriental rugs did not give her own estimate of the value of the missing items. Rather, she acted as a mere conduit for the expert opinion of a rug dealer. As we there stated:
The effect of her testimony as to value, considered as a whole, is nothing more than repetition of what she had been told by the rug dealer. It was an attempt to introduce testimony of a supposed expert who was not present and therefore not subject to cross-examination. It was hearsay and inadmissible. [Id. at 64.]
Appellant contends that the case before us more closely resembles Glennon v. Traveler's Indemnity Co., supra. In Glennon we held that the trial court improperly refused to admit valuation testimony by the owner of a diamond ring, who sought to recover under a theft insurance policy. The owner had received the ring as a gift twenty years before. She based her knowledge of the ring on a description given her by a loan society to whom she had once pledged the ring as collateral. We said:
In the present case plaintiff admittedly had little knowledge of either the value of the ring or the quality of its diamonds, but she had owned the ring for twenty years and we think long ownership of the article entitled her to give her estimate of its value for whatever it might be worth in aiding the trier of the facts in determining the value. Of course, she was subject to cross-examination to bring out the basis, or lack of basis, for her estimate, and in the end little or no weight might have been given to her testimony. [Id. at 211.]
An owner's valuation may be based on extrajudicial sources without being rendered defective. The owner necessarily relies on inquiries, comparisons, purchases and sales in forming notions of value. See State v. Hammond, 6 Wash.App. 459, 462, 493 P.2d 1249, 1251 (1972). Information received in part from others or from pricing similar articles may be a sufficient predicate for the owner's opinion.
Knowledge of value does not necessarily rest on hearsay. It might be supposed that to know value is merely to know what other people say the thing is worthmerely to have heard them offering and accepting prices. But the answer is that these various instances of offers or acceptances of prices, averaged into a mean or probable figure, are what constitute value. The statements of persons declaring their estimates of the prices they would give or receive are not taken, on the credit of those persons, as trustworthy assertions of the fact of value but merely as items of conduct which in *1081 themselves make up that total fact of conduct which we call value. Thus, if A sits in a merchant's office and listens to the terms accepted and rejected for a dozen articles, he acquires a firsthand knowledge of value; but if he goes in and asks the merchant to tell him the value of a given article, his knowledge is based on a belief in the truth of the merchant's assertion. In the former case, his knowledge is not based on hearsay. But in the latter case his knowledge is based on the hearsay assertion of another person, and therefore is inadmissible. . . . 3 Wigmore, Evidence, supra [footnotes omitted, emphasis supplied].
Unlike the owner in Yonan,[6] Mrs. Coplan did not repeat the out-of-court statement of a single expert. She stated an estimate of value on direct. On cross-examination, she admitted only that her estimation was based "on expressions of value given to [her] by others."[7] She did not purport to speak as Mr. Whiteley's mouthpiece. Additionally, Mr. Whiteley was present at trial and available for cross-examination. Thus, this case did not present the danger noted in Yonan of using an owner's opinion to get testimony of an absent expert before the jury. Rather, the owner stated her own opinion as to value formulated by synthesizing information received from knowledgeable sources. This testimony was properly admissible under the general rule allowing owners to testify as to the value of their property.
B. Appellant also presented an expert witness, Mr. Whiteley. The parties stipulated at trial that Mr. Whiteley qualified as an expert in the field of gemmology. Neither his experiential qualifications nor his familiarity with the standard of value is disputed on appeal. The challenge to Mr. Whiteley's testimony focuses here on his lack of acquaintance with the specific object to be valued. As appellee points out, Mr. Whiteley never saw the diamond, but based his estimate primarily on a description provided by Mrs. Coplan from her insurance policy. The trial court concluded that Mr. Whiteley's testimony was impermissibly based on hearsay.
Knowledge based on personal inspection or observation is always preferred, but it is not the sole admission ticket for an expert's opinion. An expert's knowledge of market value may be applied to facts supplied by a hypothetical question, or by testimony at trial. Here Mr. Gardner, the proprietor of Gemini, described the diamond, as did Mrs. Coplan. To the extent that Mrs. Coplan's testimony was based on an unknown gemmologist's description of the ring for insurance purposes, it violated the rule that a witness' knowledge must be founded on personal observation, not on hearsay.

*1082 When the witness, however, bases his testimony partly upon first hand knowledge and partly upon the accounts of others, the problem is one which calls for a practical compromise. . . . When the witness testifies to facts that he knows partly at first hand and partly from reports, the judge it seems, should admit or exclude according to his view of the need for and the reasonable reliability of the evidence. [McCormick, Evidence § 10, at 22 (2nd Ed.1972).]
Since appellant failed to introduce the original insurance policy containing the description, the trial court was unable to assess the reliability of the unknown gemmologist's analysis. However, Mrs. Coplan was capable of testifying generally about the ring's appearance and setting. Even assuming Mrs. Coplan's description was properly stricken, Mr. Gardner, the proprietor of Gemini, testified from personal inspection of the diamond. His testimony provided sufficient factual basis in the record for an expert opinion.
In the Glennon case, we permitted a gem expert to give his opinion of value based on the owner's description, even though he had never seen the ring and the description lacked many of the essential elements necessary for an accurate estimate. It was, however, "the best obtainable evidence and should been received for such weight as it was entitled." Id. at 211. We reaffirm the view expressed in Glennon that an expert may testify as to value from a description of the lost item at trial, a view shared by a majority of courts. See, e. g., Haynes v. Glenn, 197 Va. 746, 751, 91 S.E.2d 433, 437 (1956) ("This method of proving the value of articles which cannot be produced for inspection is frequently used."); Dixon v. Millhorn, 55 Ohio App. 193, 197, 9 N.E.2d 183, 185 (1936); see also Fidelity Storage Co. v. Foster, 60 App.D.C. 277, 51 F.2d 439 (1931) (expert permitted to testify as to value of antique jewelry from description and from photograph of plaintiff's grandmother taken while wearing the brooch). As was stated in an early decision, Sullivan v. Girson, 39 Mont. 274, 279, 280, 102 P. 320, 323 (1909), permitting a jeweler to value a diamond ring which the defendant refused to produce:
That it is competent for an expert witness to base his opinion, as to value, upon a description of the article in controversy, seems too clear to admit of doubt; otherwise, owing to lack of knowledge or capacity in those who have seen it, it would often be impossible to establish its value. An opinion based upon such a description merely may not be so satisfactory as in the case where the witness bases his opinion upon his own observations; yet the admissibility of it rests upon the same basis as an opinion given in answer to any hypothetical question incorporating a statement of facts.
Thus, we conclude the court erroneously struck the testimony of appellant's expert witness as to value of the missing ring.
In a civil case "[a] party is not to be precluded from recovering damages merely because they cannot be proven with exactitude." Burka v. Crestview Corp., D.C.App., 321 A.2d 853, 855 (1974). An item of personal property is not valueless because its value may be difficult to establish or proof of the exact amount of loss is unavailable. See, e. g., Silver v. Television City, Inc., 207 Pa.Super. 150, 157, 215 A.2d 335, 339 (1965). It is enough that the evidence establishes a basis for the assessment of damages "with a fair degree of probability." Id.
Reversed and remanded for further proceedings. In his discretion, the trial judge in this nonjury case may either reconsider the evidence in the light of this opinion and enter a new judgment or set the case down for a new trial.
NOTES
[1] The court denied appellee's motion for dismissal on the ground that appellant failed to establish its right to bring suit as Gemini's subrogee.
[2] Mrs. Coplan had initially agreed to accept a replacement diamond from Gemini. To facilitate replacement, she supplied a description based on one made by a registered gemmologist for an insurance policy covering the ring. The insurance policy was not introduced, but the description was received in evidence.

Mr. Whiteley, appellant's expert witness, had relied upon the insurance policy description in giving Mrs. Coplan a written appraisal before trial, in March 1974:
One loose diamond weighing 1.65 ct. The stone is of good cut, color is 21/2, clarity is VVSI. The diamond exhibits no fluorescence under long wave or short wave ultra violet light and borders near Gem quality. (Plaintiff's Exhibit # 7.)
[3] In contrast to the owner, other valuation witnesses must possess familiarity with the standard of value since their estimation requires comparison of the item with several possible classes or grades. Knowledge of the value standard enables the witness to place the particular item in the proper category.
[4] The primary reason for admitting an estimate by the owner is necessity; it may be impossible to produce other witnesses having the requisite knowledge (i. e., as to quality, cost and condition) upon which to base an opinion. See Annot., 37 A.L.R.2d 967 (1954). The more recent trend has been to predicate admissibility on the presumption that the owner being familiar with his property, knows what it is worth. Id.
[5] See State v. Hammond, 6 Wash.App. 459, 462, 493 P.2d 1249, 1251 and n.2 (1972), and cases cited therein.
[6] Yonan is distinguishable from the present case because in Yonan the owner did not testify to her own opinion of the value of the rugs based on firsthand knowledge of a range of estimated prices. Rather she stated that her valuation of the rugs was directly based on what a Connecticut dealer had told her the rugs were worth when she described them to him over the telephone after their loss. While endorsing the general rule permitting an owner to give an opinion as to value, this court in Yonan concluded that the fact of that case warranted the conclusion that the owner had not testified to her own opinion, but merely to the opinion of the Connecticut rug dealer. Under these circumstances, the rug dealer's expert opinion of the value of the rugs could have been introduced properly through the direct testimony, subject to cross-examination, of the rug dealer himself. By contrast, in the present case Mrs. Coplan testified as to her opinion of the value of the ring based on her knowledge of a range of estimates. See note 7, infra. Additionally, an expert, Mr. Whiteley, testified directly as to his opinion of the value of the ring, based on a description provided by prior testimony. See part B, infra.
[7] On redirect examination, Mrs. Coplan stated that she had formed her opinion of the value of the ring based on two written and one informal appraisals of the value of the diamond, ranging from four to eight thousand dollars, and on the appraisals of the replacement diamonds offered to her, all valued at less than four thousand dollars. She also stated:

I would have no opinion without that information. So, I simply wouldn't be able to tell you what I thought it was worth. But with the advice of gemmologists, the appraisals I got, I would not have sold the ring for less than that.