**Samuel AUXIER and Dismer Auxier Company, Appellants,**

v.

**Leonard W. KRAISEL, Personal Representative of the Estate of Morris Kraisel, Appellee.**

**Leonard W. KRAISEL, Personal Representative of the Estate of Morris Kraisel, Appellant,**

v.

**Samuel AUXIER and Dismer Auxier Company, Appellees.**

**Nos. 81–1311, 83–1310.**

District of Columbia Court of Appeals.

Argued Nov. 9, 1982.

Decided Aug. 18, 1983.

As Amended Sept. 29, 1983.

---

Albert Ginsberg, Silver Spring, for appellants in No. 81–1311 and appellees in No. 81–1310.

Michael B. McGovern, Washington, D.C., with whom Richard T. Rossier, Washington, D.C., was on the brief, for appellee in No. 81–1311 and appellant in No. 81–1310.

Before MACK and BELSON, Associate Judges, and KELLY,* Associate Judge, Retired.

PER CURIAM:

These appeals challenge a decision of the trial court which concluded that Samuel Auxier and the Dismer Auxier Company ("appellants") had breached their fiduciary duties toward Morris Kraisel in connection with the sale of a rowhouse owned by Kraisel. The court concluded that appellants had undervalued and inadequately marketed the property, with the result that Kraisel contracted to sell the house to a third party at a price that was 40% below market value. The court awarded Kraisel's estate compensatory damages of $12,500, the sum that Kraisel's representative ("appellee") was re-

---

* Judge Kelly was an Associate Judge of the court at the time of argument. Her status changed to Associate Judge, Retired, on March 31, 1983.

quired to pay to settle a specific performance action instituted after Kraisel refused to convey the house for the price specified in the contract. The court, however, refused to include in the damage award any compensation for the legal fee in the amount of $1,350 that Kraisel's personal representative incurred in defending the specific performance action.

Appellants seek reversal, *inter alia*, on the ground that certain of the trial court's factual findings and evidentiary rulings were erroneous. On cross-appeal Kraisel's representative asserts that the court erred in refusing to include attorney's fees in the award of compensatory damages. We reverse as to the denial of attorney's fees, but otherwise affirm.

Morris Kraisel, now deceased, owned several real estate investment properties in the District of Columbia. One of these properties, a rowhouse located at 635 8th Street, Northeast, is the subject of this litigation. Since 1966 the Dismer Auxier Company, a corporation licensed as a real estate broker in the District of Columbia, had managed the 8th Street property. In late 1976 Mr. Kraisel, who was then living in Florida, decided to sell the property and entered into a listing agreement with Dismer Auxier Company through its president, Samuel Auxier.

Kraisel declined to follow Auxier's suggestion that they obtain an appraisal of the value of the property. Kraisel and Auxier together arrived at an asking price of $24,000, all cash. Based upon Auxier's assessment of the property's condition, the difficulty of obtaining financing for necessary renovations, and the probable cost and delay that would attend the removal of the property's tenants, he concluded that the house would be attractive only to speculators. Consequently, Auxier did not post "for sale" signs outside the property or advertise it in the newspapers. Instead, Auxier limited his marketing efforts to contacting a number of brokers with whom he was acquainted. As a result of these efforts, in March 1977 Kraisel entered into a sales agreement with Spartan Investment Company. The contract called for a purchase price of $22,000, with the closing to occur in May 1977.

In March 1977, Mr. Kraisel was diagnosed as suffering from terminal cancer. In the latter part of that month Leonard Kraisel, the son of Morris Kraisel, visited his father in a Florida hospital and for the first time learned of the real estate contract. Concerned that the sale price did not represent the property's fair market value, Leonard Kraisel initiated his own investigation into property values in the Capitol Hill area. In addition, he obtained an appraisal from Joseph Mensh, who estimated the property to be worth $37,000.

When Morris Kraisel refused to go to settlement, Spartan Investment sued for specific performance. During the pendency of the specific performance action Morris Kraisel died. The matter was eventually settled out of court when Leonard Kraisel, acting in his capacity as personal representative of his father's estate, paid Spartan $12,500. Thereafter Leonard Kraisel, again acting in his capacity as personal representative, initiated the instant litigation.

I

Appellants' first claims of error, which concern a number of the trial court's findings of fact on the issues of reliance, duty, breach of duty, and valuation, require only brief attention. Under D.C.Code § 17–305(a) (1981), our review of such findings is extremely limited: we must treat them as presumptively correct unless they are clearly erroneous or unsupported by the record. *See, e.g. Edmund J. Flynn Co. v. LaVay,* 431 A.2d 543, 546–47 (D.C.1981). We are satisfied that there was support in the record for each of the challenged findings. Moreover, since the trial court heard the testimony and was in a position to evaluate the witnesses' credibility, we defer to its resolution of conflicts in the testimony.

Appellants also make a generalized complaint that the findings were improperly colored by the court's sympathy for Mr.

Kraisel, who was dying from cancer. Appellants therefore contend that the case "was tried on an emotional issue rather than the facts." In our view, this assertion borders on the frivolous. As an evidentiary matter, testimony regarding Mr. Kraisel's illness was relevant because it tended to explain Leonard Kraisel's involvement in the transaction. Moreover, we note that the possibility of such testimony unduly affecting the outcome of a bench trial is both remote and unsubstantiated by the record.

■ Appellants' next claims of error concern various evidentiary rulings of the trial court. Appellants assert that the trial court erred in permitting Leonard Kraisel to testify as to his opinion of the subject property's value. Appellants contend that while such testimony would have been admissible had Leonard Kraisel owned the property, the testimony was inadmissible because he was not the owner. We disagree for two reasons.

First, at the time of trial Leonard Kraisel, as his deceased father's personal representative, more than any other person had assumed the status of owner of the subject property. He had become interested in the value of the property shortly after his father had entered into the agreement to sell to Spartan, at a time when he, the only heir, was aware of his father's serious illness. Second, even in the absence of such an ownership interest, Leonard Kraisel would not necessarily have been rendered unqualified to testify as to value. Although various precedents in this jurisdiction hold that the owner of property is qualified, by reason of the fact of ownership, to offer an opinion of the property's value, *see, e.g., Hartford Accident & Indemnity Co. v. Dikomey Manufacturing Jewelers, Inc.,* 409 A.2d 1076, 1078–79 (D.C.1979), such holdings are not based so much on the fact of ownership as the owner's presumptive familiarity with the property in question. *See generally id.* Indeed, there exists considerable support for the proposition that someone other than the owner of real property may offer an opinion regarding value as long as the witness is familiar with the property and surrounding area. *See generally* 3 WIGMORE ON EVIDENCE § 714 (Chadbourn rev. 1970); *cf., e.g., Webster v. Archer,* 176 Md. 245, 247, 4 A.2d 434, 439 (1939).

In the instant case Leonard Kraisel testified that he was "very familiar" with both the subject house and other houses on the same block, and that he had investigated the asking and sales prices of comparable houses in the Capitol Hill area. Given this foundation, as well as the witness' status as personal representative of the deceased owner, we cannot say that the trial court abused its discretion in allowing Leonard Kraisel to give his opinion of the property's value. Moreover, there was ample additional evidence in the record supporting the trial court's determination of the value of the property, specifically, the Mensh appraisal.[1]

■ Appellants also contend that the trial court erred in allowing the introduction of evidence concerning appellee's settlement of the specific performance action brought by Spartan. Although evidence of settlements has traditionally been inadmissible when offered as an admission of liability, this rule of inadmissibility stems from concern that the use of such evidence as an admission might be of dubious relevance and would frustrate the policy of encouraging out-of-court settlements. *See generally* McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE § 274 at 663 (2d ed. 1972). These concerns, however, are absent when settlement evidence is introduced for another purpose. *See, e.g., id.* at 664; *accord B & B Investment Club v. Kleinert's, Inc.,* 472 F.Supp. 787, 791 (E.D.Pa.1979); FED.R.EVID. 408 & advisory committee note. Because the settlement evidence at issue here was introduced to show the amount of damages

---

1. Appellants also contend that the trial court unduly restricted their cross-examination of Leonard Kraisel and Joseph Mensh regarding the bases for their opinions as to the property's value. A perusal of the trial transcript reveals that these charges are without merit.

incurred by reason of underlying litigation with a third party, and not as an admission by appellant of liability or of the amount of damages in the instant litigation, the traditional rule of inadmissibility was inapplicable.

## II

Having disposed of appellants' contentions, we turn to the issue raised on cross-appeal: whether the trial court erred in refusing to award appellee compensation for the $1,350 in attorney's fees that he incurred in the course of defending and settling the specific performance action.

■ Although in this country attorney's fees usually are not recoverable as an element of damages, appellee sought such fees under an exception to the general rule, which provides that:

> Where a plaintiff seeks in a separate action to recover attorney['s] fees incurred by him in earlier litigation with a third person arising out of the tortious act of the defendant, ... if the natural and proximate consequences of the defendant's tortious act were to involve the plaintiff in litigation with a third person, reasonable compensation for attorney's fees may be recovered as damages against the author of the tortious act.

*Brem v. United States Fidelity & Guaranty Co.,* 206 A.2d 404, 407 (D.C.1965) (footnote omitted); *see Safeway Stores, Inc. v. Chamberlain Protective Services, Inc.,* 451 A.2d 66, 68–69 (D.C.1982). In order to recover attorney's fees under this wrongful-involvement-in-litigation exception three conditions must be satisfied: 1) the plaintiff must have incurred the fees in the course of prior litigation; 2) ordinarily that litigation must have occurred between the plaintiff and a third party who is not the defendant in the present action, and 3) the plaintiff must have become involved in the underlying litigation as a consequence of the defendant's tortious act. *See Biddle v. Chatel,* 421 A.2d 3, 7 (D.C.1980).

■ In the instant case, appellee satisfied these requirements. In addition, appellee introduced evidence that established the amount of the fees incurred in the specific performance action, as well as the fact that the fees had been paid. *Cf. id.* at 5 n. 3. The trial court admitted evidence of an attorney's fee of $1,350. However, in ruling on the merits, it declined to award compensation for attorney's fees because appellee had offered no evidence to demonstrate the reasonableness of the fees. We reverse this aspect of the trial court's ruling.

■ While it is well settled that recovery of attorney's fees under the wrongful-involvement-in-litigation exception is limited to a reasonable amount, *see generally* 1 S. Speiser, Attorney's Fees § 13.4 (1973 & 1982 Supp.), there are no District of Columbia cases that have addressed the precise question presented here: whether a plaintiff who introduces evidence demonstrating that he has paid attorney's fees incurred in previous litigation with a third party must prove that the fees were reasonable. We find persuasive, however, a recent decision in which an Illinois court ruled that such proof was unnecessary. In *Omni Overseas Freighting Co. v. Cardell Insurance Agency,* 78 Ill.App.3d 639, 33 Ill.Dec. 779, 397 N.E.2d 112 (1979), the court drew a distinction between paid bills and unpaid bills, noting that "[w]hile a paid bill is considered *prima facie* proof of reasonableness, there is no similar presumption in favor of unpaid bills." *Id.* at 645, 33 Ill.Dec. at 784, 397 N.E.2d at 117 (citations omitted). The court therefore upheld those portions of the trial court's judgment that were based upon paid bills, but reduced the award by an amount equal to the fees for which no evidence of payment or reasonableness had been introduced. *See id.*

We are of the opinion that the approach adopted by the *Omni Overseas Freighting Co.* court—at least as it pertains to paid bills for attorney's fees as *prima facie* proof of reasonableness—should be followed in the instant case, particularly since we have adopted such an approach in cases that have

addressed the reasonableness of damages sought in other contexts.[2] *See, e.g., Giant Food Stores, Inc. v. Bowling,* 202 A.2d 783, 784 (D.C.1964) (medical bills paid or incurred admissible without proof of reasonableness in discretion of trial court); *Brooks v. Capital Fleets, Inc.,* 123 A.2d 916, 917 (D.C.1956) (paid automobile repair bills *prima facie* proof of fair and reasonable cost of repairs). We therefore conclude that appellee fulfilled the requirements necessary to establish a *prima facie* case of damages, and thereafter appellants bore the burden of presenting evidence to rebut the presumptive reasonableness of the legal fees. Appellants had the opportunity to present evidence to that effect, but failed to do so. In the absence of any such evidence, the trial court erred in declining to award compensation for paid attorney's fees on the ground that appellee had failed to demonstrate that the fees were reasonable. On remand, therefore, the trial court shall increase by $1,350 the amount of judgment rendered appellee.

*Affirmed in part, and reversed and remanded in part for the entry of judgment consistent with this opinion.*

---

**2.** We express no opinion here as to bills for attorney's fees which are unpaid, but which a claimant is obligated to pay.